1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                         **DISTRICT OF NEVADA**
7

8   UNITED STATES OF AMERICA,            )
9                           Plaintiff,   )  Case No.  2:12-cr-00400-APG-GWF
                                         )
10  vs.                                  )  **FINDINGS &**
                                         )  **RECOMMENDATIONS**
11                                       )
    STEVEN E. JONES, et al.,             )  **RE: Motion to Dismiss (Dkt. #104)**
12                                       )
13                          Defendant.   )
    _____ )
14

15          This matter is before the Court on Defendant Steven E. Jones' Motion to Dismiss

16  Indictment for Violations of the Statute of Limitations and/or Motion to Dismiss for Pre-Indictment

17  Delay (#104), filed on August 5, 2013.  The Government filed its Response to the Motion to

18  Dismiss (#110) on September 13, 2013.  Defendant Jones filed his Reply to the Government's

19  Response (#118) on October 7, 2013.  The Court conducted a hearing in this matter on October 31,

20  2013.

21                              **BACKGROUND**

22          The indictment in this case was filed on October 24, 2012.  The indictment alleges that

23  beginning in or around September 2002 and continuing to on or about October 2012, the

24  Defendants engaged in a scheme to defraud others by obtaining money and property by means of

25  materially false and fraudulent pretenses, representations, half-truths and promises.  More

26  specifically, the indictment alleges that Defendant Thomas Cecrle constructed a false story that he

27  held a special position with the United States Government with access to public officials and secret

28  government programs.  Cecrle allegedly represented to victims that by virtue of his position and

1   access, he had obtained exclusive and valuable rights in property, including water rights in

2   Northern Arizona, rights to land on the Las Vegas strip, and rights and access to war bonds from

3   the World War I era.  Cecrle falsely represented that these rights and interests could be fully

4   secured only if he obtained a short term loan or investment of cash which he promised to repay at a

5   rate of return in excess of several thousand percent.  The indictment alleges that no such property

6   rights or interests existed and that the Defendants converted the monies received from victims to

7   their personal uses.  *Indictment (#1)*, ¶¶ 7-12.

8          The indictment alleges that Defendant Jones conspired and participated in the fraudulent

9   scheme as follows:  When victims questioned the legitimacy of the high yield investment or when

10  none of the money was repaid as promised, they were referred to Defendant Jones, a sitting Nevada

11  district court judge, who told potential investors and disgruntled investors that he knew of Cecrle

12  and the investments and approved of them and would vouch for Cecrle, when Defendant Jones, in

13  fact, knew that other investors had never been paid and that Cecrle and the scheme were a fraud.

14  The indictment also alleges that Defendant Jones drafted and reviewed documents associated with

15  the sham investments in an attempt to lend some indicia of legitimacy to the scheme and lull

16  investors, and used his position as a judge to act as a middleman for Cecrle by fielding calls in his

17  chambers and receiving cash proceeds from the scheme at the courthouse.  The indictment also

18  alleges that Defendant Jones established and maintained a joint bank account with Cecrle through

19  which they received and laundered in excess of $250,000 in proceeds from the alleged fraud.  ¶¶

20  13-15.

21         Count One of the indictment charges the Defendants with conspiracy to commit wire fraud

22  in violation of 18 U.S.C. § 1349 which allegedly occurred between September 2002 and October

23  2012.  Counts Two through Seven charge the Defendants with wire fraud in violation of 18 U.S.C.

24  § 1343, consisting of individual wire transmissions between December 13, 2007 and May 8, 2011.

25  Count Eight charges the Defendants with securities fraud in violation of 15 U.S.C. § 78j(b) which

26  also allegedly occurred between September 2002 and October 2012.  Count Nine charges

27  Defendants with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h),

28  which also allegedly occurred between September 2002 and October 2012.  Counts Ten and Eleven

2

charge Defendants with money transactions in property derived from specific unlawful activity in violation of 18 U.S.C. § 1957.  Counts Twelve through Twenty charge Defendants with the laundering of money instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i), involving cash withdrawals or deposits between November 16, 2007 and December 2, 2011.

## DISCUSSION

Defendant Jones moves for dismissal of the indictment on the grounds that the conspiracy charges are barred by the statute of limitations.  Alternatively, he argues that the indictment should be dismissed for prejudicial pre-indictment delay.

### 1.    Statute of Limitations.

Defendant and the Government agree that the applicable statute of limitations for the charges in the indictment is 18 U.S.C. § 3282(a) which provides as follows:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

Defendant Jones argues that the conspiracy charges are barred by the statute of limitations because his alleged participation in the conspiracy, which he denies, occurred more than five years before the indictment was returned.

The statute of limitations begins to run when the crime is complete. *United States v. Smith*, 740 F.2d 734, 736 (9th Cir. 1984), citing *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860 (1970).  A crime is complete when each element of the crime has occurred. *Id.*, citing *United States v. Drebin*, 557 F.2d 1316, 1332 (9th Cir. 1977).   In conspiracy cases, "the crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Grunewald v. United States*, 353 U.S. 391, 397, 77 S.Ct. 963, 970 (1957).  *See also United States v. Walker*, 653 F.2d 1343, 1345 (9th Cir. 1981).  Actions that cannot be prosecuted because of the statute of limitations can be considered as part of an ongoing conspiracy so long as one overt act in furtherance of the conspiracy occurred during the limitations period. *United States v. Wilbur*, 764

3

F.3d 1160, 1176 (9th Cir. 2012).  The statute of limitations on a conspiracy charge begins to run on the day after the last overt act in furtherance of the conspiracy.  *United States v. Koonin*, 361 F.3d 1250, 1253-54 (9th Cir. 2004).

 "The general rule is that a 'conspiracy continues until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy.'" *Wilbur*, 764 F.3d at 1176, citing *United States v. Recio*, 371 F.3d 1093, 1096 (9th Cir. 2004).  The duration of a conspiracy for purposes of the statute of limitations is a fact question for the jury.  *Walker*, 653 F.2d at 1346 n. 6, citing *Koury v. United States*, 217 F.2d 387, 388 (6th Cir. 1954).  *See also United States v. Siegelman*, 561 F.3d 1215, 1232 (11th Cir. 2009) and *United States v. Oliva*, 46 F.3d 320, 324-25 (3rd Cir. 1995).

The indictment in this case alleges that the conspiracies began no later than September 2002, and continued until on or about October 2012.  *Indictment (#1)*, ¶¶ 19, 27.  The Government asserts that the last overt act charged in the indictment for the conspiracy to commit wire fraud, Count One, occurred on May 8, 2011.  *Government's Response (#110), pg. 5*, citing paragraph 21 and Count Seven of the indictment.[1]  The Government therefore argues that the statute of limitations on the wire fraud conspiracy began running on May 9, 2011 and had not expired when the indictment was filed on October 24, 2012.  The Government similarly asserts that the statute of limitations on the money laundering conspiracy charged in Count Nine began to run on December 2, 2011[2], the date of the last  overt act of money laundering as charged in Count Twenty of the indictment.  *Id., pg. 6.*

---

[1] There is a technical error in the indictment.  Paragraph 21 alleges that "[i]n furtherance of the conspiracy, the defendants performed the overt acts charged in Counts Two through Six of this Indictment."  *Indictment (#1), pg. 5.*  The next section of the indictment is entitled "COUNTS TWO THROUGH SIX [,] Fraud by Wire"  *Id.*  There are, however, seven counts of wire fraud charged in the indictment, with the seventh count occurring on May 8, 2011.  *Id., pg. 6.*  The overt acts charged in Counts Two through Six also occurred within five years of the filing of the indictment.  Therefore, the technical error does not affect the Court's recommendation on this motion.

[2] Pursuant to *Koonin*, the statute of limitations on this charge commenced running on December 3, 2011.

1    The indictment, on its face, alleges that Defendant Jones engaged in wire fraud and money

2    laundering conspiracies which, based on the overt acts alleged in the indictment, continued into a

3    time period within five years of the filing of the indictment.  Accordingly, Defendant Jones' motion

4    to dismiss the indictment based on the statute of limitations should be denied, without prejudice,

5    and subject to proof at the time of trial.

6          **2.    <u>Alleged Pre-Indictment Delay.</u>**

7          Defendant Jones alternatively argues that the indictment should be dismissed on the

8    grounds that the Government's delay in bringing the indictment has prejudiced his ability to defend

9    against the charges and therefore violates the Due Process Clause of the Fifth Amendment.

10   Defendant argues that he "is now tasked with the burden of reconstructing historical events that are

11   eleven years old." *Motion (#104), pg. 6.*  He argues that this task is made even more difficult by

12   the lack of detail in the indictment, including the lack of allegations as to when the various

13   meetings in furtherance of the conspiracy took place.  *Id.*

14         *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) summarizes the case

15   law regarding dismissal of an indictment for pre-indictment delay as follows:

16         "The Fifth Amendment guarantees that defendants will not be denied
     due process as a result of excessive pre-indictment delay." *United*
17   *States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989).  Generally,
     any delay between the commission of a crime and an indictment is
18   limited by the statute of limitations.  *Id.*, citing *United States v.*
     *Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992).  In some
19   circumstances, however, "the Due Process Clause requires dismissal
     of an indictment brought within the [statute of] limitations period."
20   *Id.*

21         . . . In order to succeed on his claim that he was denied due process
     because of pre-indictment delay, [defendant] must satisfy both prongs
22   of a two-part test.  First, he must prove "actual, non-speculative
     prejudice from the delay." *Huntley*, 976 F.2d at 1290.  Second, the
23   length of the delay is weighed against the reasons for the delay, and
     [defendant] must show that the delay "offends those 'fundamental
24   conceptions of justice which lie at the base of our civil and political
     institutions.'" *Sherlock*, 962 F.2d at 1353-54 (quoting *United States*
25   *v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752
     (1977).  The second prong of the test applies only if [defendant] has
26   demonstrated actual prejudice.  [*United States v. Barken*, 412 F.2d
     1131, 1136 (9th Cir. 2005).] We have held that establishing prejudice
27   is a "heavy burden" that is rarely met.  *Huntley*, 976 F.2d at 1290.
     "Generalized assertions of the loss of memory, witnesses, or evidence
28   are insufficient to establish actual prejudice." *United States v.*

5

1    *Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995).  Consequently,
     [defendant] must show both that lost testimony, witnesses, or
2    evidence "meaningfully has impaired his ability to defend himself,"
     and "[t]he proof must demonstrate by definite and non-speculative
3    evidence how the loss of a witness or evidence is prejudicial to [his]
     case."  *Huntley*, 976 F.2d at 1290.
4

5         The defendant in *Corona-Verbera* was indicted in 1995 in regard to an alleged narcotics

6    conspiracy that dated back to 1987.  In affirming the district court's order denying the motion to

7    dismiss, the court held that defendant's claim of prejudice failed for two reasons.  "First, the

8    indictment was brought within the five-year statute of limitations.  We have held that, generally,

9    protection from lost testimony 'falls solely within the ambit of the statute of limitations.'  *Sherlock*,

10   962 F.2d at 1354."  *Id.* 509 F.3d at 1113.  Second, defendant's arguments were based on

11   generalized speculation as to what lost or deceased witnesses would have said.  The defendant

12   offered no affidavits nor any non-speculative proof as to how he was prejudiced by the loss of the

13   witnesses.  The court further noted:

14               In *Sherlock*, we found no prejudice where the record did not indicate
                 how witnesses "would have testified had their memories not dimmed.
15               *Id.*  Similarly, when a defendant fails to make a specific showing as
                 to what a deceased witness would have said, any argument of
16               prejudice is pure conjecture.  *Manning*, 56 F.3d at 1194.  *Corona-
                 Verbera*, 509 F.3d at 1113.  Furthermore, allegations of prejudice
17               "must be supported by non-speculative proof."  *United States v. Doe*,
                 149 F.3d 945, 949 (9th Cir. 1998).
18
          *Corona-Verbera*, 509 F.3d at 1113.
19

20        Defendant Jones's motion did not provide any information regarding how witnesses would

21   have testified if their memories had not dimmed, or that some witnesses, who would have testified

22   in his favor, had died during the period of pre-indictment delay.  Nor did Defendant reference any

23   lost physical evidence that would have been favorable to him.

24         In his reply brief, Defendant for the first time asserted that three individuals, who could

25   have given favorable testimony for him, died during the alleged period of pre-indictment delay.

26   Defendant asserts that Gene Isaacs, Allan Clark and Defendant's father, Stanley E. Jones, would

27   have testified to acts and conversations that underscore Defendant Jones's assertion that he did not

28   act with any intent to defraud any person.  *Reply (#118), pg. 8.*  Defendant states that Gene Isaacs

6

was connected to the GITCME entity and gave Defendant Cecrle money.[3]  Defendant Jones alleges

that he had extensive conversations with Gene Isaacs about the fact that Defendant Jones was

neither involved in nor endorsed Cecrle's business promotions.  Defendant alleges that Allan Clark

also had extensive financial dealings with co-defendant Cecrle and would have testified that

Defendant Jones never asked for investment monies and did not promote Cecrle's business

ventures.  Finally, Defendant alleges that his deceased father, Stanley E. Jones, would have also

testified to similar conversations and about Defendant's distance from Co-defendant Cecrle.

     Defendant's assertions regarding these witnesses should have been raised in his motion so

that the Government could have addressed their sufficiency in its written response.  Even if these

allegations are considered by the Court, however, Defendant has not met his burden to establish

actual prejudice as a result of the alleged delay.  The Court recognizes that it may be difficult to

demonstrate what a deceased witness would have stated.  The standard for showing prejudice is a

heavy one, however, and Defendant offers only general assertions as to what Mr. Isaacs, Mr. Clark

and Stanley Jones would have testified.  He also offers no testimony as to when the conversations

with these individuals occurred or when they died.  Defendant therefore fails to demonstrate by

definite and non-speculative evidence how the loss of these witness is prejudicial to his defense.

     Because Defendant has not met his burden to demonstrate actual, non-speculative prejudice

from the delay, the Court does not reach the second prong of the test.   The Government asserts in

its response, that the brief period of time between the last overt act on December 2, 2011 and the

filing of the indictment is not sufficient to support a finding that the delay offends those

"fundamental conceptions of justice which lie at the base of our civil and political institutions."[4]

*Reply (#110), pg. 8.*  A fuller exploration of the second prong would likely be necessary if

Defendant carried his burden on the first.  He has not done, so, however, and therefore his motion

---

[3] The Court is not familiar with the GITCME entity, but infers that it is related to Defendant
Cecrle's business promotions.

[4] The Government misstates the passage of time between the last overt act and the filing of
the indictment.  The last alleged overt act on December 2, 2011 occurred a little over eleven
months before the filing of the indictment, rather than one month as stated by the Government.

7

to dismiss the indictment based on prejudicial pre-indictment delay should also be denied.

## CONCLUSION

The indictment, on its face, sufficiently alleges that Defendant participated in conspiracies to commit wire fraud and launder money, and that overt acts in furtherance of those conspiracies were committed within five years of the filing of the indictment.  Accordingly, Defendant has failed to show that the indictment violates the statute of limitations.  Secondly, Defendant has failed to show that he sustained actual, non-speculative prejudice from the Government's pre-indictment delay in violation of his right to due process of law.  Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant Steven Jones's Motion to Dismiss Indictment for Violations of the Statute of Limitations and/or Motion to Dismiss for Pre-Indictment Delay (#104) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 8th day of November, 2013.

GEORGE FOLEY, JR.
United States Magistrate Judge

8